UNITED STATES of America, Appellee,

v.

Felix Antonio PUELLO, Appellant.

No. 1086, Docket 93–1617.

United States Court of Appeals, Second Circuit.

Argued March 16, 1994.

Decided March 28, 1994.

Lawrence S. Feld, New York City (Tenzer, Greenblatt, Fallon & Kaplan, on the brief), for appellant Puello.

Susan Corkery, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., and Beth A. Wilkinson, Asst. U.S. Atty., on the brief), for appellee U.S.

Before: TIMBERS and McLAUGHLIN, Circuit Judges, and SPROUSE, Circuit Judge of the United States Court of Appeals for the Fourth Circuit, sitting by designation.

TIMBERS, Circuit Judge:

Appellant Puello appeals from a conviction entered upon his plea of guilty in the Eastern District of New York, Denis R. Hurley, *District Judge.*

The essential issues are (1) whether, in imposing a 21 month sentence, the court's upward departure from the fraud sentencing guideline created an unwarranted sentence disparity where there had been no upward departure in a similar case, and (2) whether application of the money laundering guideline to determine the extent of the upward departure resulted in an unnecessarily high sentence.

We affirm.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On April 9, 1993, Puello pleaded guilty to violating 7 U.S.C. § 2024(c) (Supp.IV 1992) by illegally redeeming food stamp coupons worth approximately $43,000,000. He admitted at the plea hearing that he had been the owner and president of the Puello Meat and Provisions Company, Inc. He also admitted that his company received food coupons from retailers and presented them to the United States Department of Agriculture for payment despite his knowledge that Puello Meat—a wholesale food business—was ineligible to participate in the food stamp program.

After the plea hearing, the Probation Department prepared a presentence report (PSR), which calculated Puello's sentencing range in accordance with the Sentencing Guidelines' provision for fraud, U.S.S.G. § 2F1.1 (1992). The PSR assigned Puello a base offense level of 6 and added 17 levels for the $43,800,000 loss. The PSR then added two levels for more than minimal planning. This resulted in a total offense level of 25.

At an August 6, 1993 hearing, the court rejected the PSR's sentencing recommendation and found there had been no loss as defined in § 2F1.1. The court advised the parties that it was considering an upward departure on the ground that the guidelines inadequately considered the dollar amount of the fraud and the number of false statements made to facilitate the fraud. The court suggested that the money laundering guideline, U.S.S.G. § 2S1.1 (1992), would be helpful in fashioning an upward departure.

On August 26, 1993, the court held a sentencing hearing. It found that Puello committed fraud in preparing more than 500 fraudulent redemption certificates for food stamps worth over $43,000,000. The court found, pursuant to 18 U.S.C. § 3553(b) (1988) and U.S.S.G. § 5K2.0 (1992), that there were aggravating circumstances that justified an upward departure. It specifically found that the guidelines did not account for the amount of the fraud, since the sentencing range would have been the same whether Puello had redeemed $43 or $43 million in food stamps. It also found that the guidelines did not consider the fact that Puello had submitted more than 500 false certificates. It stated that the fraud guideline authorizes an upward departure if "the loss determined under [§ 2F1.1(b)(1) ] [does] not fully capture the harmfulness and seriousness of the conduct". U.S.S.G. § 2F1.1, comment. (n.10).

The court then departed upward from the applicable guideline range, using the money laundering provision, § 2S1.1, as a source of comparison. The court assigned Puello a base offense level of 6 pursuant to § 2F1.1. It then added 11 levels in accordance with § 2S1.1(b)(2)(L), which provides for an 11-level adjustment for the laundering of more than $35,000,000. After making adjustments for more than minimal planning and for acceptance of responsibility, the court reached a total offense level of 16.

Puello was sentenced to 21 months' imprisonment and 3 years' supervised release. He was ordered to pay a $40,000 fine over three years and a $50 special assessment.

On appeal, Puello contends (1) that the court improperly departed upward and (2) that the $40,000 fine was excessive.

## II.

### (A) THE UPWARD DEPARTURE

Puello contends that the court's upward departure violated the intent of Congress, in enacting the guidelines, that similarly situated defendants receive similar sentences. A court may depart from a guideline range when "the court finds there exists an

aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines". 18 U.S.C. § 3553(b). "In determining whether aggravating circumstances exist to support an upward departure, district courts are granted wide discretion." *United States v. Barone,* 913 F.2d 46, 50 (2 Cir.1990).

The guidelines generally provide for an increase in a defendant's offense level based on the amount of loss sustained as a result of the illegal conduct. *E.g.,* U.S.S.G. § 2B1.1 (1992) (increasing the offense level for theft in accordance with the amount of loss). In the instant case, the court stated that without an upward adjustment Puello would receive the identical sentence pursuant to § 2F1.1 regardless of whether he redeemed $43 or $43,000,000 in food stamps. The court also observed that Puello submitted more than 500 false certificates to facilitate the fraud and that his conduct helped others abuse the food stamp program. Since § 2F1.1 does not provide for these aggravating circumstances, we believe that the court did not abuse its discretion in departing upward.

■ Puello also contends that the court was required to sentence him in accordance with the sentence imposed in *United States v. Garced,* 92 Cr. 934 (E.D.N.Y.1992) (unreported). In *Garced,* the defendant was a meat wholesaler who pleaded guilty to improperly redeeming food stamps valued at $82,000,000. He operated his business in Brooklyn and was one of Puello's principal competitors. Judge Nickerson found that the defendant's conduct did not cause a loss within the meaning of § 2F1.1 and sentenced the defendant in accordance with the base offense level of 6. A significantly lower sentence was imposed on Garced than on Puello.

Puello further contends that *Garced* is indistinguishable from the instant case and the court erred in departing upward from the base offense level. True, the court was required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". 18 U.S.C. § 3553(a)(6). We believe that the court was

not bound by the sentence imposed in *Garced.* The court here correctly found that Judge Nickerson did not consider whether an upward departure was appropriate. Furthermore, the guidelines expressly authorize sentencing courts to depart upward for aggravating circumstances inadequately provided for in the guidelines. 18 U.S.C. § 3553(b). Accepting Puello's contention would restrict unreasonably a sentencing court's authority to depart upward under the guidelines. We reject this contention.

■ Puello finally contends that the court improperly relied on the money laundering guideline in determining the extent of the upward departure. Once a reviewing court is satisfied that the sentencing court properly decided to depart upward, it "may affirm the sentence as long as it is also satisfied that the departure is reasonable under § 3742(f)(1)". *Williams v. United States,* 112 S.Ct. 1112, 1121 (1992). A sentencing court is encouraged to look to "analogous [g]uideline[ ] provisions to determine the extent of the departure". *United States v. Rodriguez,* 968 F.2d 130, 140 (2 Cir.), *cert. denied,* 113 S.Ct. 139 (1992).

■ We believe that the court properly referred to the money laundering guideline in determining the appropriate upward departure. The fraud committed here was analogous to money laundering because it allowed others to profit from appellant's criminal activities while remaining free of government scrutiny. We reject Puello's contention that the court was required to find that his conduct ran afoul of the elements of a money laundering violation before the court could apply the money laundering guideline as an analogy in determining an upward departure. *United States v. Kikumura,* 918 F.2d 1084, 1113 (3 Cir.1990) (stating that departure by analogy should not be applied mechanically).

We hold that the upward departure was proper.

**(B)** IMPOSITION OF THE FINE

■ Puello asserts that the court erred in imposing a $40,000 fine. The guidelines provide that a court "shall impose a fine in all

cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine". U.S.S.G. § 5E1.2(a) (1992). The sentencing court is required to consider "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources". U.S.S.G. § 5E1.2(d)(2). "[T]he court may impose a lesser fine or waive the fine" if "the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the [required] fine ..., or (2) imposition of a fine would unduly burden the defendant's dependents". U.S.S.G. § 5E1.2(f). A defendant may satisfy his burden of showing inability to pay by producing independent evidence or by reference to the presentence report. *United States v. Rivera*, 971 F.2d 876, 895 (2 Cir. 1992).

Puello also asserts that the $40,000 fine was excessive and that the government failed to produce evidence of his ability to pay the fine. At sentencing, however, Puello had the burden of proving inability to pay the fine. *Id.* Moreover, Puello's counsel acknowledged that Puello had a net worth of $64,000, that he earned $400 a week, and that he was paying legal fees for representation in the instant case as well as in a civil action against him. Also, Puello's wife owned two properties that could be used to lessen the fine's adverse impact on Puello's family.

We are satisfied that the court properly considered Puello's "income, earning capacity, and financial resources" in imposing the instant fine. 18 U.S.C. § 3572(a)(1) (1988). His contention that the court was required to articulate its findings regarding the specific factors affecting its decision is without merit. *United States v. Marquez*, 941 F.2d 60, 64 (2 Cir.1991) (holding that the sentencing court need not articulate its consideration of the § 3572 factors). The $40,000 fine payable over 3 years was not excessive.

We hold that the imposition of the fine was proper.

## III.

To summarize:

The court did not abuse its discretion in departing upward from the base offense level for fraud. The court did not err in referring to the money laundering guideline in determining the degree of the departure. The fine imposed was not excessive.

We order that the mandate issue forthwith.

Affirmed.